**SIGNED THIS 15th day of March, 2019**

**THIS MEMORANDUM OPINION HAS BEEN ENTERED ON THE DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.**

Rebecca B. Connelly
UNITED STATES BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

**In re**
**ROBIN M. HOFFMAN,**                                          **Chapter 13**
    **Debtor.**                                          **Case No. 13-60831**

### MEMORANDUM OPINION

The question before the Court is whether the chapter 13 trustee in this case, Herbert L. Beskin, (the "Trustee") must disburse to creditors funds refunded to him by other creditors. The Trustee argues he must disburse the creditor refunds to other creditors pursuant to the confirmed plan. On the other hand, the debtor argues he should pay the creditor refunds to her. For the reasons explained below, the Court directs the creditor refunds in this case to be disbursed to other creditors and not distributed to the debtor.

**Background**

Robin M. Hoffman[1] filed a voluntary chapter 13 petition on April 17, 2013. *See* ECF Doc. No. 1. She filed a chapter 13 plan which required her to make payments of $275 per month for 60 months. *See* ECF Doc. No. 13. The plan projected an estimated dividend to general unsecured

---

[1] Since the time of the filing of her petition, Robin M. Hoffman has changed her name to Robin Hudson. For sake of clarity, because the docket still reflects her name as Robin M. Hoffman, the Court shall refer to her as either "Ms. Hoffman" or "the debtor."

creditors of 4%, but was otherwise a "pot plan." In other words, the total amount to be paid by the debtor (the "pot") was fixed, but the dividend to unsecured creditors was not fixed and was expected to vary based on the number and amounts of claims filed and allowed. *See In re Vastadore,* 516 B.R. 772, 775 (Bankr. W.D. Pa. 2014). In this case, other than attorney's fees, taxes, a parking fine, and a secured claim, the plan did not provide for a 100% distribution to creditors. The plan provided for a single class of general unsecured claims to share pro rata the amounts remaining after satisfaction of attorney's fees, taxes, the parking fine, and the secured claim. This Court confirmed her plan on July 3, 2013. *See* ECF Doc. No. 24.

On February 20, 2018, the Trustee reported that Ms. Hoffman had completed all of the payments required under her plan, which resulted in a dividend on allowed unsecured claims of 4.71%. *See* Trustee's Mem. ¶ 7, ECF Doc. No. 59. Not long afterward, Ms. Hoffman certified compliance with Bankruptcy Code section 1328, and the Court issued a discharge order.[2] *See* ECF Doc. Nos. 46, 49, 50. After that, the Trustee filed his Final Report and Account. *See* ECF Doc. No. 51. The Court in turn closed the bankruptcy case.

As it turns out, after the Court closed the case, two of the unsecured creditors who received pro rata disbursements under the plan, the U.S. Department of Education (DOE) and Education Credit Management Corporation (ECMC),[3] sent their disbursements back to the Trustee (the "creditor refunds"). These creditors held student loan debt owed by Ms. Hoffman. At some point, Ms. Hoffman applied for a Total and Permanent Disability Discharge of her student loans.[4]

---

[2]    The discharge order granted a personal discharge to Ms. Hoffman for her dischargeable debts. The order did not discharge her from her student loan debts. *See* 11 U.S.C. § 523(a)(8).

[3]    The debtor scheduled a debt to AES/CIT Education Loan. Schedule F, ECF Doc. No. 12, at 11. CIT Education Loan filed proof of claim number 7 and subsequently transferred the debt to ECMC. *See* Claims Register, Claim 7-1, Doc. No. 40.

[4]    It is not clear when the debtor filed for the Total and Permanent Disability Discharge of her student loan debts. According to the debtor's brief in opposition she sought a disability discharge "post discharge of her

Without such disability discharge, Ms. Hoffman would remain personally liable for the unpaid amounts due on her student loans. *See* 11 U.S.C. §§ 1328, 523(a)(8). Indeed, DOE and ECMC did approve Ms. Hoffman for the Total and Permanent Disability Discharge. *See* Ex. 1, Doc. No. 59-1. On or about May 24, 2018, DOE and ECMC returned funds to the Trustee.

Because the Bankruptcy Court case is closed, the Trustee moved to reopen the case citing his request to disburse the creditor refunds to other creditors and file a new final report and account. *See* 11 U.S.C. § 350(b). The debtor responded to the Trustee's motion. In her response, the debtor consents to reopening her case but demands that the Trustee pay to her the creditor refunds.

The parties appeared before the Court and argued their respective positions. At the conclusion of the hearing, the Court permitted the parties an opportunity to file authorities in support of their respective positions and took the matter under advisement.

The Trustee filed a brief in support of his motion to reopen and disburse the creditor refunds to other creditors. The debtor filed both an amended response to the Trustee's initial motion and her brief of authorities.

In her amended response and in her brief, the debtor now requests that she be permitted to modify the plan and that the Court refrain from ruling on the Trustee's motion until "the debtor has an opportunity to file a modified plan under 11 U.S.C. § 1129." She "moves the court to determine that . . . the debtor may file a modified plan so that the Trustee may distribute the funds in the amount of $3,611.09 to the Debtor."

The Court will address the Trustee's motion and Ms. Hoffman's response, which the Court took under advisement following the scheduled hearing held on January 31, 2019. On February

---

bankruptcy," meaning sometime after March 26, 2018. According to a letter dated May 24, 2018, filed as exhibit to the Trustee's brief, "ECMC's records indicate that the . . . student loan debt has been approved for disability and has been written off as of December 29, 2015."

21, 2019, the final day for the parties to file briefs, Ms. Hoffman amended her response to add new arguments not addressed previously in the filings or at the scheduled hearing. Because the Court finds that such additional arguments are unpersuasive and thus do not prejudice the Trustee's request, the Court will also address the amended response and the motions contained therein.

**Conclusions of Law**

As an initial matter, the Court finds it appropriate to reopen this case to permit the Trustee to administer the creditor refunds. The request to reopen the case is unopposed; what is contested is whether the Trustee should disburse the creditor refunds to the other unsecured creditors. Accordingly, the Court will grant the Trustee's motion to reopen pursuant to section 350(b) of the Bankruptcy Code for the Trustee to administer assets. The Court now turns to the matter in controversy.

*Should the creditor refunds be distributed to creditors or paid to the debtor?*

The Trustee's motion asks to reopen the closed bankruptcy case simply so that he may disburse the creditor refunds to other creditors. If he had received the creditor refunds before the debtor had completed her plan, he would not need to seek leave of court to re-disburse these plan disbursements to other creditors. Yet, at this stage, because the refunds occurred after the debtor completed her plan, received her discharge, and the Court closed her case, the Trustee seeks leave of court. The Trustee requests that the Court reopen the case to permit him to administer the assets and file a new final report and account after he has re-disbursed the plan payments. *See* 11 U.S.C. § 350. The debtor opposes the Trustee's request to disburse the creditor refunds to other creditors and pleads to the Court to require the Trustee to transfer the creditor refunds to her. As explained below, the Court rejects the debtor's demands because the debtor does not have a right to the creditor refunds.

A debtor's obligation to make plan payments to a chapter 13 trustee is solidified once her proposed chapter 13 plan is confirmed by order of the bankruptcy court. The order is both a finding that the plan meets all of the requirements of section 1325 of the Bankruptcy Code and a court directive to the debtor to carry out those promises made in her plan. The order, entered after notice and opportunity for hearing, binds the debtor and each creditor to the provisions of the plan; further, it is *res judicata* of the confirmation requirements of Bankruptcy Code section 1325. 11 U.S.C. § 1327(a).

Once Ms. Hoffman's plan was confirmed, she was bound by the confirmation order to the terms of her plan. *See* 11 U.S.C. § 1327. In this case, she was bound to pay 60 payments of $275 for a total of $16,500. *See* ECF Doc. Nos. 13, 24.

Although bound to pay a total of $16,500 as plan payments, Ms. Hoffman demands that the Court order the Trustee to return $3,611.09 of those payments to her. She asserts that the Court should order a return of $3,611.09, and hence a reduction of the required total payments, because two unsecured creditors, who would otherwise share a pro rata dividend of approximately 4% with the other unsecured creditors, have voluntarily forgiven the debtor of her debts to them.

*Creditor Refunds*

Once a plan is confirmed, a trustee shall disburse the plan payments to creditors holding allowed claims, according to the terms and provisions of the confirmed plan. 11 U.S.C. § 1326(a)(2). When a creditor rejects a trustee's disbursements and returns those payments back to the trustee, the creditor has sent a "creditor refund" to the trustee. The creditor's refund of the plan disbursements simply places the plan payments back into the hands of the trustee to disburse according to the terms and provisions of the confirmed plan. The trustee is bound, by the confirmation order, to disburse the plan payments to the creditors until he has received the total

gross payments, or the case is dismissed or converted to another chapter. 11 U.S.C. § 1327; *see* 11 U.S.C. §§ 1326(a)(2), 349(b)(3), 348(e). If, as is the case here, a creditor returns the disbursement back to the trustee, this action does not release the trustee from his obligation to comply with the order of confirmation and disburse the plan payments until full satisfaction of all claims or until all the plan payments have been disbursed. *See* 11 U.S.C. §§ 1326, 349(b)(3), 348(e).

*Does a debtor have a right to creditor refunds?*

The debtor requests this Court direct the Trustee to pay to the debtor the creditor refunds in his possession. These creditor refunds derive from her plan payments that the Trustee disbursed. What the debtor is really asking is for this Court to order the Trustee to return her plan payments back to her but allow her to retain her chapter 13 discharge.

Bankruptcy courts have addressed this question before. For example, the Honorable Paul Mannes of the United States Bankruptcy Court for the District of Maryland held that the chapter 13 trustee was required to disburse the funds returned to him to the unsecured creditors. *In re Bacon*, 274 B.R. 682, 686 (Bankr. D. Md. 2002). The reason a particular creditor rejected a trustee's disbursement did not make a difference. Judge Mannes also ruled that "a debtor has no right to plan payments after confirmation of a plan, except where excess funds remain after all distributions authorized by the plan have been made in full." *Id.* at 685 (quoting *In re Pegues*, 226 B.R. 328, 336 (Bankr. D. Md. 2001)). As Judge Mannes underscored, when the confirmed plan provides for unsecured creditors to be paid pro rata and not satisfied in full, "pursuant to the plan, absent modification, the unsecured creditors [are] entitled to a pro rata share of any funds remaining from [the plan base gross]." *Id.* at 685.

Similarly, the Honorable William Sawyer of the United States Bankruptcy Court for the Middle District of Alabama applied 11 U.S.C. § 1326(c) and held "that when distributed funds are returned to the Chapter 13 trustee after the debtor has obtained a discharge, the funds are to be redistributed pursuant to the plan until the unsecured claims provided for by the plan are fully paid, at which point any excess funds may be returned to the debtor." *In re Dubose*, 555 B.R. 41, 43 (M.D. Ala. 2016).[5]

> *May the Court direct the Trustee to distribute a creditor refund of plan payments to the debtor because the creditor refunded the payments to the Trustee "due to actions taken by the debtor post discharge"?*

Ms. Hoffman contends that the creditor refunds held by the Trustee should be returned to her because she took action after she received a chapter 13 discharge to obtain a disability discharge of her student loan debt. Ms. Hoffman successfully completed a chapter 13 plan to receive a discharge in bankruptcy and was fortunate enough to also complete the process for an administrative discharge of her student loan debt that was not discharged through the bankruptcy process.[6] Yet, these actions do not change the math: her plan obligation under her confirmed plan is $16,500. After she paid $16,500, and was awarded a discharge because she completed these payments, she now asks the Trustee to refund to her $3,611.09 from those plan payments. If he does so, the result modifies her confirmed plan obligation to $12,888.91.[7] According to the debtor,

---

[5] The court in *DuBose* was faced with refunds in two cases. In one case, the trustee received a creditor refund after the case was dismissed and in the other case, the trustee received a refund after the debtor received a discharge. The court distinguished what happens if a chapter 13 case is dismissed from what happens if the plan is completed, the debtor discharged, and the trustee receives a refund afterward. The court looked to section 1326 and concluded that if a creditor refund is received *after a case is dismissed*, the trustee may distribute that creditor refund to the debtor. The court in *DuBose* grappled over whether it made a difference if the plan was confirmed before dismissal or was unconfirmed at the time of dismissal. Because the question in this case does not concern a case that had been dismissed before the trustee received the creditor refund, this Court need not address that question.

[6] Not all borrowers who seek a disability discharge of a student loan are granted a discharge. No doubt Ms. Hoffman's circumstances are sympathetic and the disability discharge is warranted. Good intentions aside, this circumstance is not authority for the Court to arbitrarily disregard the Code.

[7] $16,500 – $3,611.09 = $12,888.91.

her efforts to obtain a disability discharge of the student loan debt after completing her chapter 13 plan and obtaining a chapter 13 discharge should render a retroactive plan modification. In the alternative, she insists she should be permitted to file a modified plan "so that the Trustee may distribute the returned funds in the amount of $3,611.09 to the Debtor." Debtor's Am. Resp., ECF Doc. No. 60.

*May the debtor modify the plan at this point?*

Ms. Hoffman argues in her amended response and in her brief that she should be allowed to modify her plan pursuant to section 1329 so that the Trustee may distribute the creditor refunds to her instead of to the unsecured creditors. Ms. Hoffman suggests that because the Trustee has requested the case be reopened, she is entitled to modify the plan pursuant to 11 U.S.C. § 1329. *See* Am. Resp. ¶ 11, ECF Doc. No. 60; Debtor's Br., at 2–4, ECF Doc. No 61. What the debtor has overlooked is that section 1329 only permits modification *before* a debtor has completed her plan payments. *See* 11 U.S.C. § 1329(a) ("At any time after confirmation of the plan *but before* the completion of payments under such plan, the plan may be modified . . . ." (emphasis added)). As the debtor has frequently pointed out, this Court has already granted her a discharge for "completing all payments under the plan." *See generally* Debtor's Resp., ECF Doc. No. 56; Debtor's Am. Resp., ECF Doc. No. 60; Debtor's Br., ECF Doc. No. 61. Thus, she is requesting modification of the plan *after* she has completed all payments under the plan, not before completion. The debtor's request to modify her plan, six years after she filed her case and one year after she completed her payments to the Trustee, is simply too late. *See* 11 U.S.C. § 1329(a).

Not only is Ms. Hoffman too late to modify her confirmed plan, she has not provided adequate support to permit this Court to grant such reduction in her plan obligation. Once the plan

is confirmed, the debtor is bound to the plan terms.  11 U.S.C. § 1327.  If the debtor seeks to modify the payment terms of her plan, as confirmed by the Court, to reduce her obligation, the debtor must show an unanticipated change in financial circumstances.  *See In re Arnold*, 869 F.2d 240 (4th Cir. 1989).  The fact that filed claims are less in number or amount than those scheduled is not deemed to be a change in the debtor's financial circumstances.[8]  Likewise, a reduction in a claim due to the satisfaction of that claim by an outside source should not be deemed a change in the debtor's financial condition.[9]  It follows that a reduction in an unsecured claim, due to voluntary forgiveness of that debt, does not worsen a debtor's financial condition to justify a reduction of the amount of her plan obligation.[10]

---

[8]     As cited by both the Trustee and Ms. Hoffman in their post-hearing briefs, this Court has consistently ruled that the simple fact that the amount of claims filed with the Court total less than originally scheduled is not a substantial and unanticipated change in financial circumstances that compels modification of the chapter 13 plan.  *See* Decision and Order, *In re Clark*, No. 5-00-0969 (Bankr. W.D. Va. Apr. 1, 2004) (Krumm, J.) (court did not permit modification when allowed tax claims were less than scheduled absent any showing of *change in financial circumstances*); *see also In re Martin*, 232 B.R. 29, 35 (Bankr. D. Mass. 1999); *In re Beasley*, 34 B.R. 51, 54 (Bankr. S.D.N.Y. 1983) (court did not permit debtors to reduce obligation to chapter 13 trustee simply because some scheduled unsecured creditors did not file claims).  The Court finds no reason to deviate from this well settled rule.  In this case, the claims came in more or less as anticipated after the case was filed.  The difference here is that the amount of two particular claims decreased after the debtor completed her plan, received a discharge, and took action after the Court closed her case.  This fact pattern presents even less of a reason to permit plan modification than does the situation in which the amount of allowed claims are less than estimated or scheduled.

[9]     In *In re Davis*, 314 F.3d 567 (11th Cir. 2002), the U.S. Court of Appeals for the Eleventh Circuit was confronted with the unilateral modification of a chapter 13 plan by a chapter 13 trustee without the filing of a modified plan or a court order modifying the terms of the plan.  The chapter 13 trustee had reduced the amount that the debtor had to pay under her plan based on the granting of relief from the automatic stay to a secured creditor, who had repossessed and sold collateral securing its claim.  Further, the trustee on his own had determined that he would cease payments on the creditor's secured claim and disallow the unsecured portion.  In disapproving of the trustee's actions, the Eleventh Circuit emphasized the appropriate procedures to obtain a court order for plan modification (section 1329) and for claims allowance (section 502).  The Eleventh Circuit ultimately vacated the lower court judgments that condoned the trustee's actions and remanded.  Just like the debtor in *Davis*, Ms. Hoffman's outside satisfaction of a claim is not grounds for reducing her payments under her plan without taking proper action under the Code (that is, under section 1329), a remedy now unavailable to her because she has already completed her plan payments.

[10]     Indeed, if a debtor proposes a plan that states that an unforeseen reduction in claims to be paid will cause a reduction in the amount of the debtor's payments under the plan, such plan would not be proposed in good faith or represent the debtor's best efforts unless the debtor is proposing to pay each allowed claim, secured and unsecured, in full (100%).  *Martin*, 232 B.R. at 34 ("A percentage plan may also fail to comply with the requirement found in § 1325(a)(3) that it be proposed in good faith.  Any plan which would allocate the windfall created by the failure of certain creditors to file timely proofs of claim to the debtor while unsecured creditors receive less than full payment on their claims does not demonstrate a fundamental fairness to creditors." (citations omitted)).  Therefore, the debtor's

**Conclusion**

After completing her plan payments to the Trustee, the debtor sought and obtained a disability discharge of her student loan debts. The student loan creditors then refunded disbursements back to the Trustee. Because her confirmed plan did not provide for a 100% dividend to general unsecured creditors, the Trustee seeks to disburse the creditor refunds to other creditors of the same class. For the reasons described above, the debtor's demand to distribute the creditor refunds to her is denied. In this case, the debtor remains bound by the terms of her confirmed plan to pay to the Trustee the total amounts required by the plan. Because she has completed her payments under the confirmed plan and has received a chapter 13 discharge, she is too late to attempt to modify her plan. Furthermore, the fact that two of her unsecured creditors voluntarily forgave her debts is not grounds to modify a confirmed plan when the confirmed plan did not provide for 100% payment to all unsecured claims.

The Court will issue a separate order granting the Trustee's motion, overruling the debtor's objection to the Trustee's motion, and denying the debtor's motion in her response.

A copy of this Memorandum Opinion shall be provided to the debtor, debtor's counsel, and the chapter 13 trustee.

---

assertion that amounts to be paid to the Trustee must be reduced simply due to a change in a claim to be paid calls into question the debtor's good faith at the time of her plan confirmation.